Filed 12/21/21  Higgins v. St. Margaret's Episcopal School CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GARRETT HIGGINS,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>ST. MARGARET'S EPISCOPAL SCHOOL et al.,<br><br>    Defendants and Appellants. | G059800<br><br>(Super. Ct. No. 30-2020-01146870)<br><br>O P I N I O N |

Appeals from an order of the Superior Court of Orange County, Craig L. Griffin, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Call & Jensen, William P. Cole and David R. Sugden for Defendants and Appellants.

Law Office of John David Pereira and John David Pereira for Plaintiff and Appellant.

\*          \*          \*

In this defamation case arising from a series of events which occurred when plaintiff Garrett Higgins was a high school student at St. Margaret's Episcopal School (St. Margaret's), defendants St. Margaret's, Jamie Bunch and William Moseley (collectively, defendants) and plaintiff appeal from an order partially granting and partially denying defendants' motion to strike brought pursuant to Code of Civil Procedure section 425.16 (the anti-SLAPP statute).[1] Defendants argue the trial court should have granted the motion in full because each of the alleged defamatory communications was made "in furtherance of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest" (§ 425.16, subd. (e)(4)), and plaintiff failed to show a probability of prevailing on any of his claims. Plaintiff takes the opposite position. He contends none of the communications fall within the ambit of the anti-SLAPP statute's protections, and even if they did, the trial court made a series of errors which led to the erroneous conclusion that plaintiff did not show minimal merit as to any of his claims.

Applying the two-part analysis articulated by the Supreme Court in *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149 (*FilmOn.com*), and given the specific context in which the communications occurred, we find all the communications were made "in connection with" a public issue or an issue of public interest. (§ 425.16, subd. (e)(4).) Further, our review of the evidence reveals plaintiff failed to establish a probability of prevailing on any of his causes of action. Accordingly, we affirm the order to the extent it partially granted defendants' motion, reverse it to the extent it partially denied the motion, and remand the matter with directions to the trial court to vacate the existing order and enter a new order granting the motion in its entirety.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

FACTS

The series of events giving rise to this lawsuit began when plaintiff was a junior at St. Margaret's, a private school with a total of approximately 1,200 students in early childhood classes through 12th grade.

Two female students at the school complained about plaintiff to Jamie Bunch, the then dean of female students. One said plaintiff purposefully "nudged her breast," laughing when she told him to stop, and made derogatory comments about African-Americans. The other claimed he used inappropriate slurs towards homosexuals.

Responding to these complaints, the assistant principal in charge of 9th through 12th grade students, James Harris, and other school administrators met with plaintiff. Plaintiff denied involvement in the incidents, but said he was "'touchy'" and believed others may misinterpret his actions. Harris advised him to change his behavior, not share details of the meeting with others, not attempt to discern who made the complaints, and not engage in any retaliation. Plaintiff agreed.

A day later, Bunch spoke to plaintiff when he came into her classroom asking for details about the complainants. He told her "he knew he was 'handsy' but not in a 'bad way.'" She declined to share any information because the girls feared retaliation by him. She also cautioned him to refrain from touching girls and saying inappropriate things to them.

During the next three weeks, four more female students spoke to Bunch about plaintiff. One relayed he would often "spread his legs in class to show that he had an erection" and then look down at it after getting a girl's attention. Another reported plaintiff touched and rubbed himself under similar circumstances. Yet another stated he reached his hand inside her shirt without consent. And the last one said she observed him grabbing a girl's waist from behind as she leaned to grab something.

Harris met with plaintiff again, this time with St. Margaret's principal, Tony Jordan, and plaintiff's parents in attendance. Plaintiff's parents did not believe their son would act inappropriately towards females. Nevertheless, Jordan advised them "there would be serious consequences" if St. Margaret's received any additional credible complaints of sexual harassment.

Over the course of the next few months, Bunch received more complaints from female students about incidents of unwanted kissing, touching and other sexual advances by plaintiff. In addition, an adult female school employee reported plaintiff "grabbed her around the waist while she was bending over."

Eventually, the Head of School at St. Margaret's, William Moseley, determined plaintiff should no longer be allowed on the school's campus. He explained to plaintiff's parents that plaintiff could finish the school year via distance learning and would need prior express permission from the principal to come onto campus for any reason. They agreed.

Thereafter, the security shift lead at St. Margaret's, Richard Metcalfe, posted a notice regarding plaintiff on the wall of the school's security office for purposes of communicating with security personnel. It included a picture of plaintiff, stated he was no longer a student and directed that if he was seen on campus he should be escorted off and a supervisor should be notified. Though the security office is locked and not accessible to students, two female students ended up seeing the notice when taken into the office for school fingerprinting.

Not long before the end of the school year, plaintiff's mother sent an e-mail to Jordan advising him plaintiff planned to be on campus to "do some library research and hang out at lunch with some of his friends." Jordan responded by stating he should not come to campus without seeking and obtaining advance permission as had been agreed upon, and by cautioning her that if plaintiff showed up without such permission he would likely be dismissed from the school the same day.

4

Less than one week later, Moseley saw plaintiff walking toward St. Margaret's campus from an adjacent parking lot. Through a rolled down window, Moseley reminded plaintiff he was not allowed on campus except with permission. He also cautioned, "It's very close to the end of the year; let's finish strong and not mess things up."

Plaintiff finished his junior year at St. Margaret's and attended a different school for 12th grade. During his senior year, plaintiff allegedly attended a St. Margaret's football game with his then girlfriend who was a St. Margaret's student. An unidentified St. Margaret's staff member purportedly approached plaintiff's then girlfriend and her family and told them plaintiff was not wanted on campus, even at a football game.

Roughly one year after leaving St. Margaret's, plaintiff sued St. Margaret's, Bunch, Moseley and others, alleging defamation. The communications on which the complaint's first cause of action for slander and libel are based appear to include: (1) the written notice posted in the school's security office; (2) Moseley's warning to plaintiff a few weeks before the end of the school year; (3) an alleged statement by Bunch to certain students that plaintiff was "gone for good"; and (4) the statement purportedly made by an unspecified St. Margaret's staff member at the football game. A second cause of action for slander and libel alleges, inter alia, Bunch made unspecified "false and unprivileged accusations against [plaintiff] related to alleged misconduct of a sexual nature."

Defendants moved to strike each cause of action against them, or alternatively specified allegations, pursuant to the anti-SLAPP statute. They argued each of the causes of action, including all the statements on which they were based, arose from protected activity as defined in section 425.16, and plaintiff could not present any admissible evidence to show a probability of success on them.

5

After a hearing and taking the matter under submission, the trial court granted the motion, in part, and denied it, in part. It concluded the alleged statements were not protected activity covered by the anti-SLAPP statute with the exception of the purported statement by Bunch about defendant being "gone for good." And with respect to the latter statement, the court found plaintiff did not meet his burden of showing a probability of prevailing.

Defendants and plaintiff timely appealed.

DISCUSSION

Defendants contend the trial court erred in concluding most of the alleged statements which form the basis of plaintiff's complaint fall outside the scope of the anti-SLAPP statute. They assert (1) all the statements qualify for protection because they were made in connection with an issue of public interest, and (2) plaintiff failed to meet his burden of showing a probability of prevailing on his claims. Plaintiff disagrees in all respects. He argues none of the statements—even the one which the trial court found to be protected—fall within the express scope of the statute. In the alternative, he claims the trial court made a series of errors, including evidentiary ones, which without warrant led it to find that the requisite minimal merit of his claims was not met. We conclude defendants' motion should have been granted in its entirety because all the alleged defamatory statements qualify as activity protected by the anti-SLAPP statute and plaintiff failed to establish the minimal merit of his claims.

*Anti-SLAPP Legal Principles and Standard of Review*

"The Legislature enacted section 425.16 in response to 'a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' [Citation.] These lawsuits prompted the Legislature to declare that 'it is in the public interest to encourage

6

continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process.' [Citation.] To limit such risks, the anti-SLAPP legislation provides a special motion to strike 'intended to resolve quickly and relatively inexpensively meritless lawsuits that threaten free speech on matters of public interest.' [Citation.] In 1997, the Legislature amended the statute to provide that, directed to this end, the statute 'shall be construed broadly.'" (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 619 (*Rand Resources*).)

"The procedure made available to defendants by the anti-SLAPP statute has a distinctive two-part structure. [Citations.] A court may strike a cause of action only if the cause of action (1) arises from an act in furtherance of the right of petition or free speech 'in connection with a public issue,' and (2) the plaintiff has not established 'a probability' of prevailing on the claim. [Citation.] [¶] A defendant satisfies the first step of the analysis by demonstrating that the 'conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) [of section 425.16]' [citation], and that the plaintiff's claims in fact arise from that conduct [citation]." (*Rand Resources, supra*, 6 Cal.5th at pp. 619-620, italics omitted.) "'If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.'" (*Cross v. Cooper* (2011) 197 Cal.App.4th 357, 370 (*Cross*).)

"On appeal, we review the motion de novo and independently determine whether the parties have met their respective burdens. [Citations.] . . . [W]e consider 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' [Citation.] However, we do not weigh credibility or compare the weight of the evidence." (*Cross, supra*, 197 Cal.App.4th at p. 371.)

7

*Protected Activity*

Defendants contend all the communications on which plaintiff's causes of action are based constitute protected activity under section 425.16, subdivision (e)(4), which protects conduct "in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." They focus on the three statements about which the trial court concluded otherwise: (1) Metcalfe's written communication to the school's security team regarding Higgins's status and procedures to be taken if he was seen on the school's campus; (2) Moseley's reminder to plaintiff he was not allowed on campus and caution about ruining things so close to the end of the school year; and (3) the statement made at a football game to the family of plaintiff's then girlfriend that the school did not want him on campus, even for a football game. Defendants also argue the court erred in declining to dismiss the second cause of action for defamation against Bunch because it is based on the same alleged statement as the first defamation cause of action against her, which the court dismissed.

In his respective appeal, plaintiff takes issue with the trial court's determination regarding Bunch's statement he was "gone for good." He asserts such a statement falls outside the scope of the anti-SLAPP statute.

The key to our analysis is the Supreme Court's decision in *FilmOn.com*, in which it outlined a two-part analysis for determining whether activity falls within the scope of the "catchall" provision embodied in section 425.16, subdivision (e)(4). "First, we ask what 'public issue or . . . issue of public interest' the speech in question implicates—a question we answer by looking to the content of the speech." (*FilmOn.com, supra*, 7 Cal.5th at p. 149.) The statute does not define these terms, but caselaw provides guidance. Among the matters to consider are "whether the subject of the speech or activity 'was a person or entity in the public eye' or 'could affect large

8

numbers of people beyond the direct participants' [citation]; and whether the activity 'occur[red] in the context of an ongoing controversy, dispute or discussion' [citation], or 'affect[ed] a community in a manner similar to that of a governmental entity.'" (*Id*. at pp. 145-146; see *Rivero v. American Federation of State, County, and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 919-924 [discussing attributes of public issues and issue of public interest]; *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132-1133 [providing guiding principles for same].)

"Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest." (*FilmOn.com, supra*, 7 Cal.5th at pp. 149-150.) A key consideration is the context in which the speech occurred, including the audience, the speaker and the communication's purpose. (*Id*. at pp. 151-152.) Overall, "'some degree of closeness' between the challenged statements and the asserted public interest [is required]. [Citation.] . . . '[I]t is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate.'" (*Id*. at p. 150.)

Defendants assert the issue of public interest to which all the disputed statements related is the "protect[tion] of schoolchildren from sexual abuse and harassment . . . ." Specifically, they claim most were intended to ensure plaintiff, "an alleged sexual predator[]," stayed away from the school's campus—the very location where he allegedly carried out the complained acts. And Bunch's statement about plaintiff being "gone for good" was aimed at reassuring the alleged victims they would be safe at school.

Plaintiff disagrees, arguing none of the statements implicated an issue of public interest because they, at most, concerned "the enrollment status of a minor child at

9

a private school," they were made to very limited audiences, and there was no ongoing debate or controversy at the times they were made.[2]

We agree protecting minors, including schoolchildren, from abuse, bullying and harassment, sexual or otherwise, is—in the abstract—an issue of public interest. (See *Hicks v. Richard* (2019) 39 Cal.App.5th 1167, 1176; *Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 465-468; *Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534, 1547-1548.) Plaintiff's assertion the statements solely concerned plaintiff's enrollment status is too myopic, and his remaining contentions relate to the second part of the requisite analysis, not the first.

As to whether the statements were made "in connection with" such an issue of public interest, the particular facts and circumstances in this case lead us to conclude all of the disputed statements were directly connected to protecting minors from abuse. (§ 425.16, subd. (e)(4).)

As previously noted, indispensable to the analysis, though not necessarily dispositive, are "considerations of context—including audience, speaker, and purpose." (*FilmOn.com, supra*, 7 Cal.5th at p. 152.) "[U]ltimately, our inquiry does not turn on a normative evaluation of the substance of the speech. We are not concerned with the social utility of the speech at issue, or the degree to which it propelled the conversation in any particular direction; rather, we examine whether a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest." (*Id*. at p. 151.)

---

[2] Plaintiff also asserts the communications fall outside the scope of the anti-SLAPP statute because they were false. Not so. Truth or falsity of a communication is of no import in determining whether activity is protected in the first step of the anti-SLAPP analysis. (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1549; *Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 419-420.)

10

Here, the statements were made in the midst of purported student against student sexual harassment at St. Margaret's. More than one female student reported being victimized by plaintiff and the school acted to prevent further incidents. Each statement was made by, or at the direction of, a St. Margaret's administrative official closely connected to developing and implementing a plan to keep students safe. And the words were spoken specifically to further that end by keeping plaintiff away from the school's campus. Under these circumstances, and given the significant public interest implicated by the topics of sexual harassment and the protection of minor students at school, all the statements fall within the scope of the anti-SLAPP statute's catchall provision. (See, e.g., *Cross, supra*, 197 Cal.App.4th at p. 375 [finding conduct "directly related" to issue of public interest because it served interests of preventing child abuse and protecting children].)

In a separate argument, defendants contend the trial court erroneously denied their anti-SLAPP motion as to plaintiff's second cause of action for defamation against Bunch. They argue it is based on the same statement by Bunch which underlies the first cause of action, and the trial court granted their motion as to that statement. We agree.

The second cause of action incorporates by reference all preceding paragraphs of the complaint. It claims Bunch "made false and unprivileged accusations against [plaintiff] related to alleged misconduct of a sexual nature." In providing this context, and because the cause of action does not allege Bunch made any statement other than that specified in the first cause of action, the only reasonable interpretation is both claims against Bunch are based on the same statement—a statement we have concluded falls within the anti-SLAPP statute's protections.

In sum, defendants met their burden of demonstrating anti-SLAPP protection for all statements forming the basis of plaintiff's suit.

11

*Probability of Success*

We next consider whether plaintiff demonstrated a probability of prevailing on his causes of action. The trial court did not reach this issue except regarding the one statement by Bunch it found protected by the anti-SLAPP statute. We nevertheless address it for the first time because the parties fully briefed it below and on appeal. (See *Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 615-616.)

"[P]ast cases interpreting [the statutory language] establish that the Legislature did not intend that a court, in ruling on a motion to strike under this statute, would weigh conflicting evidence to determine whether it is more probable than not that plaintiff will prevail on the claim, but rather intended to establish a summary-judgment-like procedure available at an early stage of litigation that poses a potential chilling effect on speech-related activities." (*Taus v. Loftus* (2007) 40 Cal.4th 683, 714 (*Taus*).) Hence, "'a plaintiff responding to an anti-SLAPP motion . . . "must demonstrate that the complaint is both legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."'" (*Id.* at pp. 713-714.) "The plaintiff may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence." (*Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1017.)

At this early stage, "the court's responsibility is to accept as true the evidence favorable to the plaintiff [citation] . . . ." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.) "[T]he defendant's evidence is considered with a view toward whether it defeats the plaintiff's showing as a matter of law, such as by establishing a defense or the absence of a necessary element." (*1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 585.)

Defamation is an invasion of a person's interest in his or her reputation. (*Smith v. Maldonado* (1999) 72 Cal.App.4th 637, 645 (*Smith*).) It consists of (1) the

12

intentional publication of a statement of fact which is (2) false, (3) unprivileged, and (4) has a natural tendency to injure or which causes special damage. (*Taus, supra*, 40 Cal.4th at p. 720.) Defendants argue plaintiff failed to show any potential for success because his evidence was lacking in many respects. Among the problematic areas they identify with respect to one or more statements are: making of the statement, statement of opinion (nonactionable) as opposed to statement of fact (actionable), defamatory meaning, publication, falsity and special damages. They also assert each statement is subject to the common interest privilege and plaintiff did not negate the privilege's application with a showing of actual malice.

We need not reach most of the parties' arguments concerning the relevant elements or claimed defenses because plaintiff admits he made no showing of special damages.

A plaintiff in a defamation case must demonstrate the statements at issue either had a natural tendency to injure the plaintiff or actually caused special damage. In situations of written defamation (i.e., libel), the former is established if the defamatory meaning appears from the language itself without the need to resort to explanation or extrinsic facts.[3] (Civ. Code, § 45.) Such written statements are deemed libel per se. (*McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 112.) In situations of oral defamation (i.e., slander), words used have a natural tendency to injure if: they charge a person with a crime; they state someone was indicted, convicted, or punished for a crime; they impute on a person "the present existence of an infectious, contagious, or loathsome disease;" they directly injure a person "in respect to his [or her] office, profession, trade or business"; or they impute on a person impotence or a want of chastity. (Civ. Code, § 46; see *Regalia v. The Nethercutt Collection* (2009) 172

---

[3]    Civil Code section 45 defines the defamatory nature of libel as "expos[ing] any person to hatred, contempt, ridicule, or obloquy, or . . . caus[ing] him [or her] to be shunned or avoided, or  . . . tend[ing] to injure [a person] in his [or her] occupation."

13

Cal.App.4th 361, 367 (*Regalia*) ["A slander that falls within the first four subdivisions of Civil Code section 46 is slander per se and requires no proof of actual damages"].)

The alleged statements by Moseley, Bunch, and an unidentified St. Margaret's staff member at a football game were made orally. But plaintiff does not explain how they had a natural tendency to injure him. And for good reason; they did not. None of the statements said anything remotely similar to one of the aforementioned categories.[4]

Similarly, the one alleged written statement—the Metcalfe memorandum—was not libel per se. (*Selleck v. Globe International, Inc.* (1985) 166 Cal.App.3d 1123, 1132 ["The initial determination as to whether a publication is libelous on its face, or libelous per se, is one of law"].) It included a picture of plaintiff, stated he was no longer a student and directed that if he was seen on campus he should be escorted off and a supervisor should be notified. Plaintiff argues any student seeing the memorandum "would conclude [he] had done something terribly wrong." We disagree as there are a myriad of possible reasons why someone might no longer be a student, and it is common practice for public and private schools to restrict nonstudent access to campus for safety purposes. One would need to have knowledge of extrinsic facts or be privy to a further explanation to understand the memorandum in a defamatory sense. (See *Smith, supra*, 72 Cal.App.4th at pp. 645-646 [where written publication is ambiguous or innocent on its face, plaintiff must prove defamatory meaning using extrinsic circumstances or showing third person reasonably understood it in claimed derogatory sense].)

---

[4] Plaintiff claims his action against Bunch includes a comment she made to certain female students that he had been expelled and the court wrongly excluded evidence he submitted showing Bunch made such a statement. We need not decide the evidentiary issue he raises because even assuming Bunch made the additional statement, it would not amount to slander per se as it does not fall within a category of slander for which no proof of actual damages is required. (See § 46, subds. (1)-(4); *Regalia, supra*, 172 Cal.App.4th at p. 367 [slander not falling in first four categories listed in statute is slander per quod which requires proof of special damages].)

Because none of the statements had a natural tendency to injure (i.e., they were not slander or libel per se), plaintiff needed to make a prima facie showing of special damages. He self-admittedly made no attempt to do so. This is fatal to his entire case, and we need not reach the remainder of the merits related arguments raised by the parties.

DISPOSITION

The order is reversed to the extent it partially denied defendants' motion to strike and affirmed in all other respects. On remand, the trial court is directed to vacate the existing order and enter a new order granting defendants' anti-SLAPP motion in its entirety. Defendants are entitled to their costs on appeal.

MARKS, J.*

WE CONCUR:

MOORE, ACTING P. J.

FYBEL, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15