Filed 11/29/22 O'Connor v. Phonexa Holdings CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| RACHEL O'CONNOR, <br><br> Cross-complainant and Respondent, <br><br> v. <br><br> PHONEXA HOLDINGS, LLC, <br><br> Cross-defendant and Appellant. | B311537 <br><br> (Los Angeles County Super. Ct. No. 20STCV29922) |

APPEAL from an order of the Superior Court of Los Angeles County, Richard L. Fruin, Jr., Judge. Affirmed.

Law Office of Steven R. Friedman, Steven R. Friedman, and Michael E. Friedman for Cross-defendant and Appellant.

Tashroudian Law Group, David A. Tashroudian, and Mona Tashroudian for Cross-complainant and Respondent.

Phonexa Holdings, LLC (Phonexa) hired Rachel O'Connor (O'Connor) as its chief marketing officer and fired her a few months later after she raised concerns about the company's compliance with COVID-19 public health measures. The parties then filed dueling lawsuits. Phonexa (the first to file suit) claimed O'Connor and her husband Sean Halley (Halley) stole proprietary information from the company. O'Connor filed a cross-complaint asserting various employment claims. Both sides then filed anti-SLAPP motions to strike the other's lawsuits. We resolved O'Connor and her husband's appeal from the trial court's denial of their anti-SLAPP motion in a prior opinion. (*Phonexa Holdings, LLC v. O'Connor* (Aug. 26, 2022, B308548) [nonpub. opn.] (*Phonexa I*).[1]) This appeal is from the trial court's order denying Phonexa's anti-SLAPP motion. We consider whether the cross-complaint's references to Phonexa's lawsuit and COVID-19-related statements by Phonexa's CEO support O'Connor's claims for recovery.

## I. BACKGROUND

### A. *Phonexa's Complaint*

Phonexa sued O'Connor and Halley in August 2020. Among other things, Phonexa alleged O'Connor's relationship

---

[1] O'Connor and Halley contended their copying of company data, which served as the basis for all of Phonexa's claims against them, was undertaken in anticipation of litigation and qualified as protected activity under the anti-SLAPP statute. The trial court determined O'Connor and Halley failed to satisfy either prong of the anti-SLAPP statute. We affirmed in part and reversed in part, concluding Phonexa's claims arose from protected activity but some had minimal merit.

2

with senior management at the company deteriorated; she took two days off work starting on July 20, 2020; and during her time off, she "cop[ied] the hard drive of her work computer to a series of personal external hard drives and thumb drives" with help from Halley. Phonexa alleged O'Connor copied the electronic materials at the direction of an executive at a competing company to steal Phonexa's trade secrets.

Phonexa's specific causes of action against O'Connor were for breaching confidentiality agreements, breach of fiduciary duty, violation of the Computer Fraud and Abuse Act (CFAA) (18 U.S.C. § 1030), violation of California's analogue of the CFAA (Pen. Code, § 502), misappropriation of trade secrets, violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200), receipt of stolen property (Pen. Code, § 496), and conversion.

### B.    *The Allegations of O'Connor's Cross Complaint*

O'Connor filed a cross complaint asserting multiple employment claims against Phonexa.[2] These are the pertinent allegations.

Phonexa's chief executive officer, David Gasparyan (Gasparyan), initially instructed Phonexa employees to work from home in compliance with stay-at-home orders issued in response to COVID-19, but later, Gasparyan "would question and interrogate employees who were working from home." He also made several statements about COVID-19: the disease was a

---

[2]    O'Connor filed a first amended complaint after Phonexa filed its anti-SLAPP motion. The trial court determined this did not moot the anti-SLAPP motion to the original, superseded complaint, and that determination is unchallenged on appeal.

3

"'hoax' and an attempt to disrupt the . . . 2020 presidential elections," something "exaggerated by the media," and "no more dangerous than the common flu."  "Many" employees returned to the office for fear of losing their jobs, and when O'Connor shared employee concerns regarding Phonexa's return-to-work  policy with human resources in May 2020, Gasparyan demanded the complaining employees' names and threatened retaliation.

O'Connor worked remotely throughout her tenure at Phonexa.  She advised Phonexa in June 2020 that she "suffers from a preexisting medical condition [that] can flare up under stressful conditions" and required her to be cautious about contracting COVID-19.  Despite this notice and public health orders requiring non-essential employees to work from home, Gasparyan asked O'Connor "numerous times" when she planned to work in the office.

During a July 20, 2020, phone call, Gasparyan "berated and belittled" O'Connor and "falsely accus[ed] her of forcing her direct reports to work from home . . . ."  Two days after that phone call, O'Connor sent Phonexa a "formal written complaint" via email that objected to: the company's "non-compliance with state-mandated  rules and regulations"; "retaliation . . . by . . . Phonexa and Gasparyan, including harassment and being subject to a hostile work environment due to [O'Connor's] previously verbalized health and safety concerns"; and "unfair treatment . . . for making prior complaints regarding health and safety."  And about two hours after sending that email, O'Connor was notified her employment was being terminated.

As we shall discuss in more detail, paragraphs 55 and 56 of the cross-complaint—part  of the document's "general

4

allegations"—allege: (1) Phonexa sued her "[a]s further retaliation for bringing complaints regarding health and safety to [its] attention" and (2) "[Phonexa's] act of filing a lawsuit against [O'Connor] further exacerbated [her] emotional distress and financial damages."

O'Connor's enumerated causes of action against Phonexa are for wrongful termination in violation of public policy; retaliation in violation of Labor Code sections 1102.5 and 6310; maintaining an unsafe workplace in violation of Labor Code section 6400; violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200); and violation of the Fair Employment and Housing Act (FEHA) in the form of disability discrimination (Gov. Code, § 12940, subd. (a)), failure to provide a reasonable accommodation (Gov. Code, § 12940, subd. (m)), and failure to engage in the interactive process (Gov. Code, § 12940, subd. (n)). Although each enumerated cause of action incorporates all preceding paragraphs of the complaint by reference, none expressly mentions Phonexa's lawsuit against O'Connor.

### C. Phonexa's Anti-SLAPP Motion

Phonexa's anti-SLAPP motion sought to strike "O'Connor's action in its entirety" or, in the alternative, each cause of action "and each purported claim contained therein." Phonexa contended O'Connor's claims arise from two categories of anti-SLAPP protected activity: statements on an issue of public interest (Gasparyan's statements concerning COVID-19) and a statement made in connection with an issue under review in a judicial proceeding (Phonexa's lawsuit).

The trial court rejected the first of these protected activity contentions, emphasizing that references to Gasparyan's

5

statements in O'Connor's complaint "are merely explanatory—they were clearly intended as background for [O'Connor's] position that she was fired because she didn't feel safe, that she was 'constantly harassed' about when she would be returning to the workplace, and that she was terminated within [two] hours after she lodged a complaint about the purported harassment." The trial court agreed, however, that paragraphs 55 and 56 (concerning Phonexa's lawsuit) did allege a claim for retaliation arising from protected activity. Analyzing the matter as "a Prong [Two] issue," the trial court concluded O'Connor demonstrated a probability of success on the merits and accordingly denied Phonexa's motion notwithstanding its (partial) protected activity determination.

## II. DISCUSSION

We hold the trial court did not err in denying Phonexa's anti-SLAPP motion, but we reach that conclusion without finding it necessary to proceed past step one of anti-SLAPP analysis. Our Supreme Court has repeatedly explained that "[a]llegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 394 (*Baral*); accord, *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1012 (*Bonni*); *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1064 (*Park*).) Here, as we go on to explain, O'Connor's allegations concerning Phonexa's lawsuit and Gasparyan's statements are best read to provide mere context for, and evidence of, her claims that she was fired for objecting to Phonexa's COVID-19 policies and that she was pressured to return to the office. The challenged allegations are

6

therefore incidental and do not support a claim for recovery, and they are not subject to striking under the anti-SLAPP statute.

### A. Legal Framework

Phonexa invokes two categories of anti-SLAPP protected activity. Code of Civil Procedure section 425.16, subdivision (e)(2) protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."[3] Section 425.16, subdivision (e)(4) protects "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

"Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit."' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni, supra*, 11 Cal.5th at 1009.)

In the first-step analysis, courts "'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are

---

[3] Undesignated statutory references that follow are to the Code of Civil Procedure.

7

protected under a statutorily defined category of protected activity. [Citation.]" (*Bonni, supra,* 11 Cal.5th at 1009.)

### B.   O'Connor's Claims Do Not Arise from Phonexa's Lawsuit

The anti-SLAPP statute applies only where protected "speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park, supra,* 2 Cal.5th at 1060; *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 620 [a defendant's first-step burden requires a showing "that the 'conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) [of section 425.16]' [citation], and that the plaintiff's claims in fact *arise* from that conduct"].) Identifying the allegations that supply the elements of a plaintiff's claims is critical to our first-step analysis because, as already mentioned, "[a]llegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral, supra,* 1 Cal.5th at 394; see also *Starview Property, LLC v. Lee* (2019) 41 Cal.App.5th 203, 209 ["By its terms, the anti-SLAPP statute is directed at striking *causes of action*, not merely factual allegations"].)

In its opening brief on appeal, Phonexa contends that because each enumerated cause of action in O'Connor's cross-complaint incorporates paragraphs 55 and 56 (concerning Phonexa's lawsuit against her), the "entire complaint" is "permeat[ed]" with "claims which must be stricken." But the fact that sections of a pleading stating claims for recovery incorporate paragraphs referencing protected activity does not by itself

8

establish the claims arise from protected activity. (*Olivares v. Pineda* (2019) 40 Cal.App.5th 343, 352 ["incorporated allegations of protected activity merely provide context and are not the basis for [the] plaintiffs' claim for recovery"].) Phonexa makes no effort to link the allegations in paragraphs 55 and 56 to the elements of O'Connor's various claims and instead rests on the notion that its lawsuit represents the "gravamen" of all alleged claims. Even if this were a defensible reading of the cross-complaint, our Supreme Court expressly rejected this sort of analytical approach in *Bonni*. (*Bonni, supra*, 11 Cal.5th at 1009-1011 [the gravamen approach—whereby "a court [does] not examine the underlying acts individually, but instead . . . identif[ies] the 'gravamen' or 'principal thrust' of the cause of action and consider[s] only whether that gravamen arises from protected activity"—would "saddl[e] courts with an obligation to settle intractable, almost metaphysical problems about the 'essence' of a cause of action that encompasses multiple claims"].) We therefore reject it here too.

In Phonexa's reply brief, however, the company argues paragraphs 55 and 56 state a claim for recovery in their own right, again relying on their incorporation by reference in O'Connor's enumerated causes of action. But plaintiffs frequently incorporate general allegations into all subsequent causes of action as a matter of course (*Kajima Engineering and Const., Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 931-932), and the elements of O'Connor's theories of recovery are not conceivably established by Phonexa's lawsuit. Indeed, the two claims for recovery that are most amenable to Phonexa's argument —O'Connor's claims for retaliation under Labor Code sections 1102.5 and 6310—still do not arise from Phonexa's

9

lawsuit because both require an adverse *employment* action and neither can support liability based on post-termination conduct.[4] (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 288 ["a prerequisite to asserting a violation of Labor Code section 1102.5 is the existence of an employer-employee relationship *at the time the allegedly retaliatory action occurred*"], emphasis added; Lab. Code, § 6310, subd. (a) [prohibiting "discharge" or "discriminat[ion]" against an employee for, among other things, reporting workplace safety issues].)

There are, in other words, sufficient facts alleged as part of O'Connor's enumerated causes of action to support her claims, and in that circumstance, we will not reach to read a cause of action to include additional, meritless claims based on the blanket incorporation of preceding allegations. (*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland* (2020) 54 Cal.App.5th 738, 755 [rejecting the defendant's attempt to "ignore[ ] [the] plaintiffs' substantiated allegations, and replace[ ] those allegations with its own version of facts to attempt to show the claims arise out of protected activity"]; see also *Ratcliff v. Roman Catholic Archbishop of Los Angeles* (2022) 79 Cal.App.5th 982, 1005 ["For the purposes of the present appeal, we take the amended complaint at its word. The claim for ratification is based on the allegations actually identified as ratifying"].) Our reading of O'Connor's complaint is also confirmed by her repeated representations, both in the trial court and on appeal, that she

---

[4] In its reply brief, Phonexa acknowledges and does not dispute O'Connor's recognition that, as an act occurring after she was fired, Phonexa's lawsuit cannot serve as a basis for any of her claims.

does not seek any recovery predicated in whole or part on Phonexa's lawsuit.

### C. O'Connor's Claims Do Not Arise from Gasparyan's Statements Regarding the Public Response to COVID-19

O'Connor's claims for wrongful termination in violation of public policy and retaliation in violation of Labor Code sections 1102.5 and 6310 concern her allegedly retaliatory firing; her claim for violation of Labor Code section 6400 concerns allegedly unsafe working conditions; her FEHA claims concern the pressure Gasparyan applied to hasten her return to the office notwithstanding her medical condition; and her claim under the Unfair Competition Law draws on various parts of all that we just recounted. The only claims for which statements by Gasparyan might supply a basis for liability are those under FEHA.

Phonexa contends O'Connor "repeats and references Gasparyan and Phonexa's protected speech as a basis for liability" in paragraphs "22, 24, 26, 29, 30, and 31" of the cross-complaint.[5] These paragraphs, however, all appear in the general

---

[5] Gasparyan's statements about when O'Connor would begin working from the office are not protected activity under the anti-SLAPP statute because they do not address an issue of public interest; they are distinct from any broader debate about the public response to COVID-19. (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 150 [statements are protected under the anti-SLAPP statute's catch-all provision only where there is "'some degree of closeness' between the challenged statements

11

allegations section and provide, at most,[6] "evidence of liability or a step leading to some different act for which liability is asserted." (*Park*, *supra*, 2 Cal.5th at 1060.) Paragraph 22, for instance, alleges that "[o]n numerous occasions, Gasparyan would question and interrogate employees who were working from home and not working in the office, all while the Governor's Orders were still in place." Assuming this was protected activity, its only function in the complaint is to buttress O'Connor's claim that Gasparyan pressured *her* to return to work and to contextualize her workplace safety complaint. Paragraphs 26 and 31, which allege Gasparyan said "jobs would be lost" if the business suffered due to remote work and threatened to retaliate against employees whose concerns O'Connor relayed to him, operate to the same effect. Paragraph 30, which notes Gasparyan's skepticism about the severity of COVID-19 generally and alleges that O'Connor told Gasparyan she "did not agree with his comments, but respected that people have different opinions," likewise sets the scene for the *acts* which form the basis of O'Connor's claims without any suggestion that the statements themselves justify relief.

Phonexa contends paragraph 51 of O'Connor's complaint "specifically identifies" an email in which Gasparyan suggested public health orders violated the First Amendment "as a basis for liability." The relevant portion of paragraph 51, however,

---

and the asserted public interest" such that "'the statement . . . in some manner itself contribute[s] to the public debate'"].)

[6]     Paragraphs 24 and 29 have nothing to do with Gasparyan's or Phonexa's speech. They discuss statewide COVID-19 policies and the fact that O'Connor worked remotely.

provides as follows: "on July 21, 2020, the day before [O'Connor] sen[t] the complaint email to [Phonexa] regarding health and safety matters, Gasparyan sent an email to [O'Connor] stating that he 'trusted' her work." That is all. There is no reference to Gasparyan's epidemiological or constitutional theories. This allegation serves only to provide evidence that there was no non-pretextual reason for O'Connor's termination.

Phonexa further contends paragraphs 57 through 62, "when stripped of the clever phrasing, . . . demonstrate Phonexa is being sued for speech alone." These paragraphs discuss O'Connor's medical condition, her disclosure of this to Phonexa, alleged harassment and pressure to return to work, and her termination in retaliation for submitting a complaint regarding workplace safety. Phonexa appears to suggest O'Connor is in effect "suing Phonexa for providing the accommodation she requested." Even if this were an accurate summary of the basis of O'Connor's FEHA claims, it has nothing to do with protected speech activity.

Departing from O'Connor's complaint, Phonexa further contends *O'Connor's* special motion to strike *Phonexa's* complaint and supporting materials shed light on the basis for her claims. Assuming for argument's sake that the anti-SLAPP statute's provision that "the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based" (§ 425.16, subd. (b)) extends to these materials, they still do not support Phonexa's position. Phonexa emphasizes O'Connor's characterization of Phonexa and Gasparyan as "COVID deniers," references to emails in which Gasparyan touted "conspiracy theories about Dr. Fauci" and "circulated a meme of Governor Newsom," and discussion of

13

Gasparyan's vow that he would fight any charged violation of public health orders in court. Like similar remarks mentioned in O'Connor's complaint, these statements merely provide context for the alleged acts from which O'Connor's claims do arise.

## DISPOSITION

The order denying Phonexa's special motion to strike is affirmed. O'Connor shall recover her costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.

We concur:


RUBIN, P. J.


MOOR, J.

14