Filed 7/13/23  D'Arcy v. Schulte CA4/3
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PATRICK J. D'ARCY et al., | |
| Plaintiffs and Respondents, | G057203 |
| v. | (Super. Ct. No. 30-2017-00916754) |
| BRETT SCHULTE, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, James J. Di Cesare, Judge.  Affirmed.  Request for judicial notice denied.

Law Office of Benjamin G. Ramm and Benjamin G. Ramm for Defendant and Appellant.

Patrick J. D'Arcy et al., in pro. per., for Plaintiffs and Respondents.

\*          \*          \*

Attorney Patrick D'Arcy and his law practice (collectively D'Arcy) sued Brett Schulte, among others, for allegedly defaming him in reviews on a web site called Ripoff Report. Schulte moved to strike D'Arcy's complaint under Code of Civil Procedure section 425.16[1] (the anti-SLAPP statute). Schulte argued that the defamation claim against him arose from acts in furtherance of free speech in connection with a public issue, and D'Arcy would not be able to demonstrate he was likely to prevail on the claim. Following briefing, the trial court denied the motion, finding it a "close call." Although Schulte had demonstrated the defamation claim arose from free speech in connection with a public issue, D'Arcy had met his burden of minimal merit sufficiently to permit his claim to proceed.

In the original appeal, we concluded the trial court reached the right result, but disagreed that the public interest or issue requirement was satisfied. (*D'Arcy et al. v. Schulte* (Apr. 24, 2020, G057203) [nonpub. opn.] (*D'Arcy*).) Schulte sought review in the California Supreme Court, which deferred action pending the disposition in *Geiser v. Kuhns* (2022) 13 Cal.5th 1238 (*Geiser*). (*D'Arcy v. Schulte*, review granted Aug. 12, 2020, S262532.) After *Geiser* was decided, the Supreme Court remanded the case to us for reconsideration in light of *Geiser*. After applying the test discussed in *Geiser*, based on the allegations at issue, we conclude no public issue or issue of public interest exists. Accordingly, we affirm the trial court's order denying the anti-SLAPP motion.

I

FACTS

We restate the facts from our original opinion. "BASTA is 'a nonprofit law firm devoted exclusively to low-income tenants' and represents them in unlawful detainer

---

[1] Subsequent statutory references are to the Code of Civil Procedure.

2

trials.  BASTA generally demands jury trials in such cases.  Suffice to say that among landlords trying to evict tenants, BASTA is not a popular organization.

"D'Arcy often represents landlords, and on his web site, he has frequently written blog entries about BASTA, referring to them, among other things, as 'the firm that deadbeat tenants turn to.' . . .  D'Arcy stated BASTA is 'feared by many landlord attorneys – and for good reason – they will stall you to death with their litigation tactics, and force landlords to pay them off or else endure huge legal fees to fight them.  The legal work they produce is mostly crap, but they are experts at finding small mistakes that can stop an eviction cold.'  BASTA, D'Arcy stated, gets 'a slice of the action' whenever they recover money for their clients.  There is much more that D'Arcy has written about BASTA, but for the purpose of providing some relevant background, it is fair to conclude that D'Arcy harbored a very poor opinion of this law firm." (*D'Arcy*, *supra*, G057203.)

"In April 2016, a post was made on the web site Ripoff Report about D'Arcy.  Ripoff Report says it is 'a worldwide consumer reporting Web site and publication, by consumers, for consumers, to file and document complaints about companies or individuals.  While we encourage and even require authors to only file truthful reports, Ripoff Report does not guarantee that all reports are authentic or accurate.  Be an educated consumer.  Read what you can and make your decision based upon an examination of all available information.'

"The initial post about D'Arcy was made by an individual purportedly named Zach Gellar, which stated D'Arcy was 'incompetent' and had mishandled his unlawful detainer case.

"Schulte commented on the post about D'Arcy under the name 'John.'  The post was as follows:

"'I have never been represented by Mr. D'Arcy, however I found his web page when reasearching [*sic*] the excellent non-profit "BASTA" that represented me in my case . . . and won for what it's worth.  Mr. D'Arcy seems to really dislike BASTA

3

and rants about them on his . . . web page (in third person no less). Based on that, here's my oppinion [*sic*] on Attorney Patrick J. D'Arcy.

"'His website is oc-attorney.com with the title "Patrick J. D'[A]rcy - A Professional Law Corporation" and states that his practice includes Real Estate Law, Backruptcy [*sic*] Law, Criminal Defense Law, and Business Litigation. What that tells me is this guy isn't good enough at *anything* to specalize [*sic*], and that he's so desperate for work he'll take anything he can get. If you're good at something, you specalize [*sic*]. His obsession with BASTA is hard to understand . . . I asked about Patrick J. D'Arcy at BASTA and they didn't even remember him at first. He thinks he's a big deal, no one else seems to. Then they laughed. He's sort of a joke there.

"'If you wonder WHY Patrick J. D'Arcy is considered a joke at BASTA, I encourage you to read his own website oc-attorney.com [*sic*] It reads more like the ravings of a crazy person than an attorney. As I mentioned previusly [*sic*], he writes about himself in third person, which is often a sign of mental illness, and brags that LA Weekly wanted to interview *him* for their article about BASTA but he "refused". Oh sure Patrick D'Arcy, you turned down press . . . because you're so modest? This guys [*sic*] is *desperate* for attention. And not only that, his writting [*sic*] is pretty bad. But I guess that's what you'd expect from Cal State Northridge.

"'As of this writting [*sic*] BASTA had over 48 positive Yelp reviews from happy clients . . . and Patrick J. D'Arcy has zero. He's disproportionately represented here on RipOff Report though . . . [*sic*] Decide for yourself what that means.'

"In April 2017, D'Arcy filed the instant lawsuit, and he amended his complaint on July 26. D'Arcy claims in his brief that Schulte 'was quickly connected to BASTA . . . [and] is a BASTA IT manager, and was even served the [complaint] at BASTA's office.'

4

"Schulte was named in the complaint as 'John D.' The first amended complaint (the complaint) alleged Schulte's statement on Ripoff Report was defamatory on five grounds:

"'a. In the title of the fake "review" it states, "Incompetent Attorney."

"'b. The basis for "Incompetent Attorney" is not supported by any facts, and is therefore defamatory on its face. Mr. D'Arcy has defeated BASTA at bench trials, a jury trial and even on appeal.

"'c. The fake review falsely states that Mr. D'Arcy suffers from "mental illness."

"'d. The fake review falsely impugns Mr. D'Arcy's truthfulness about being interviewed for the *LA Weekly* article regarding BASTA. In fact, Mr. D'Arcy requested that the magazine NOT quote him, as confirmed by an email with Hillel Aron, the author who published the article.

"'e. The allegation that Mr. D'Arcy has "zero" positive Yelp reviews as of March 17, 2017 is false. Mr. D'Arcy had 5 star reviews on February 4, 2016 from "Manuel C." (on an eviction case) and on June 10, 2016 from "Fred J." (an eviction).'

"We limit our evaluation of the alleged defamatory statements to the statements pleaded in the complaint set forth above. 'In defamation cases California follows a . . . pleading rule[] under which "the words constituting an alleged libel must be specifically identified, if not pleaded verbatim, in the complaint.' (*Glassdoor, Inc. v. Superior Court* (2017) 9 Cal.App.5th 623, 635.)

"After much wrangling over discovery, Schulte filed the instant anti-SLAPP action. After a number of delays and continuances, the motion was heard in December 2018, and denied by the trial court. Schulte now appeals." (*D'Arcy*, *supra*, G057203.)

As noted above, we found the trial court properly denied the order in the first appeal, and we now reconsider the matter, as ordered by the Supreme Court. Both

5

parties filed supplemental briefs pursuant to rule 8.200(b) of the California Rules of Court,[2] and we further granted D'Arcy leave to file a reply supplemental brief.


II

DISCUSSION

*A. Supplemental Briefing and Record*

As D'Arcy did in his original respondent's brief, in the supplemental briefing filed after remand, he appears to attempt to introduce new facts. For example, his reply supplemental brief states that Schulte's post caused him to lose work on BASTA cases. He makes statements about the effort required to take down "fake posts" and other claims about the impact of the alleged defamation. He contends that persons "targeted" for "reputation destruction" "have committed suicide." None of these statements include citations to the record, and they are entirely improper. We are here to reevaluate the anti-SLAPP motion in light of new law. We are not here to consider new facts, and particularly not conclusory statements unsupported by evidence. Any factual claims that do not include citations to the original record are disregarded. (Rule 8.204(a)(1)(C).)

We also disregard D'Arcy's citation to a Los Angeles Superior Court case. *(Dennis P. Block et al. v. Brett Schulte, Daniel Bramzon, BASTA et al.* (Super. Ct. LA County No. EC067254).) That case, and an uncited, unpublished appeal (apparently *Block v. Bramzon* (Jan. 22, 2021, B292129) [nonpub. opn.]) are entirely irrelevant to this one. Despite D'Arcy's claim to the contrary, rule 8.1115(b)(2), which allows unpublished cases to be cited if "relevant to a criminal or disciplinary action" does not apply here, as this is not a "a criminal or disciplinary action."

---

[2] Subsequent references to rules are to the California Rules of Court.

Finally, as stated in *D'Arcy*, *supra*, G057203, D'Arcy's request for judicial notice of documents not included in the trial court's record is denied.

### B. *Statutory Context and Standard of Review*

"The purpose of the anti-SLAPP statute is to dismiss meritless lawsuits designed to chill the defendant's free speech rights at the earliest stage of the case." (*Timothy W. v. Julie W.* (2022) 85 Cal.App.5th 648, 657.) The anti-SLAPP statute states: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) As relevant here, section 425.16, subdivision (e), defines an "'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue'" as: "(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

The anti-SLAPP analysis has two prongs. The court first decides whether the defendant has met its burden to demonstrate that the challenged cause of action arises from protected activity. (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 71.) If the defendant has met its burden to show the anti-SLAPP statute applies, "the burden then shifts to the plaintiff to demonstrate a probability of prevailing. [Citation.] If the plaintiff does so, the motion to strike under the anti-SLAPP statute must be denied. To establish the requisite probability of prevailing, the plaintiff must state and substantiate a legally sufficient claim. [Citation.] 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient

prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.""" (*Timothy W. v. Julie W.*, *supra*, 85 Cal.App.5th at p. 657.)

"We review the trial court's decision on an anti-SLAPP motion de novo." (*Timothy W. v. Julie W.*, *supra*, 85 Cal.App.5th at p. 658.)  In conducting our review, "[w]e consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.'"  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Ca1.4th 260, 269, fn. 3.)

*C.  Protected Activity*

"We must first decide whether the challenged claims arise from acts in furtherance of Schulte's right of free speech or right of petition under one of the categories set forth in section 425.16, subdivision (e)." (*D'Arcy*, *supra*, G057203.)  "A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062-1063.)  "[T]he focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.'" (*Ibid.*)

"Courts should analyze 'each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected.'" (*Bishop v. The Bishop's School* (2022) 86 Cal.App.5th 893, 904 (*Bishop*).)  "In deciding whether the initial 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89, quoting § 425.16, subd. (b)(2).)

What we said in *D'Arcy*, *supra*, G057203, remains true:  "As a defamation case, there is no doubt that Schulte's right of free speech is implicated.  But because that speech was not before an official body, the anti-SLAPP statute only comes into play if

the speech was "'"in connection with a public issue"' or 'an issue of public interest.' (§ 425.16, subds. (e)(3), (4).)"

*D. Public Issue or Issue of Public Interest*

"As noted above, section 425.16, subdivision (e)(3), states 'any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest' is within the scope of the anti-SLAPP statute. The same is true of subdivision (e)(4), which states that the following is within the ambit of the anti-SLAPP statute: 'any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.'" (*D'Arcy*, *supra*, G057203.)

The contours of the public issue or interest requirement of the anti-SLAPP statute have evolved significantly in the past few years. In *Geiser*, the factual context was "a sidewalk picket purporting to protest a real estate company's business practices after the company evicted two long-term residents from their home." (*Geiser*, *supra*, 13 Cal.5th at p. 1243.) Approximately 25 to 30 members of the group Alliance of Californians for Community Empowerment (Alliance), an advocacy group, picketed outside the home of Greg Geiser, the CEO of Wedgewood, the real estate company. (*Id.* at pp. 1243, 1251.) Subsequently, Geiser sought civil harassment restraining orders against numerous individuals associated with a protest outside of his home, including the former homeowners and the director of Alliance. (*Id.* at p. 1244.) The defendants filed an anti-SLAPP motion, which was denied by the trial court. (*Id.* at p. 1246.) "The Court of Appeal held the activity at issue to be beyond the scope of anti-SLAPP protection, concluding that the picket did not implicate a public issue and concerned only a private dispute between the company and the residents it had evicted." (*Id.* at p. 1243.) The Supreme Court ultimately disagreed, found the activity protected, and remanded the case. (*Ibid.*)

9

The Supreme Court granted review to clarify the application of the two-part test[3] it had previously articulated in *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133 (*FilmOn*). The court noted in *FilmOn* that "[o]ur courts have ably distilled the characteristics of 'a public issue or an issue of public interest.' (§ 425.16, subd. (e)(4); see *Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 919-924 . . . [describing three nonexclusive categories of public interest]; *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132-1133 . . . [describing additional attributes of protected conduct].)" (*Id.* at p. 149.) But what appellate courts had sometimes had difficulty doing was articulating "the requisite nexus between the challenged statements and the asserted issue of public interest—to give meaning, in other words, to the 'in connection with' requirement" of section 425.16, subdivision (e)(4). (*FilmOn*, at p. 149.)

Accordingly, the Supreme Court in *FilmOn*, *supra*, 7 Cal.5th at pages 149-150, set forth a two-step analytic framework for cases where anti-SLAPP protection was claimed under section 425.16, subdivision (e)(4), the statute's "catchall provision." "First, we ask what 'public issue or . . . issue of public interest' the speech in question implicates—a question we answer by looking to the content of the speech. (§ 425.16, subd. (e)(4).) Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest. It is at the latter stage that context proves useful." (*FilmOn*, at pp. 149-150.) Noting that "virtually always, defendants succeed in drawing a line—however tenuous—connecting their speech to an abstract issue of public interest" subdivision (e)(4) "demands 'some degree of closeness' between the challenged statements and the asserted public interest." (*FilmOn*, at p. 150.)

---

[3] Essentially, this means that the first prong of the anti-SLAPP analysis includes a separate two-part test when the public interest/public issue factor is relevant in a particular case.

Accordingly, "'it is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate.'" (*FilmOn*, *supra*, 7 Cal.5th at p. 150.) "What it means to 'contribute to the public debate' [citation] will perhaps differ based on the state of public discourse at a given time, and the topic of contention. But ultimately, our inquiry does not turn on a normative evaluation of the substance of the speech. We are not concerned with the social utility of the speech at issue, or the degree to which it propelled the conversation in any particular direction; rather, we examine whether a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest." (*Id.* at pp. 150-151.)

Applying this test in *Geiser*, the court noted the appellate court had decided that the demonstration outside Geiser's home "'focused on . . . a private matter concerning a former homeowner and the corporation that purchased her former home,' and not on 'any societal issues of residential displacement, gentrification, or the root causes of the great recession.' We do not see why defendants' expressive activity fits only one characterization and not both." (*Geiser*, *supra*, 13 Cal.5th at p. 1250.) The evidence included a declaration from a legal observer stating the purpose of the demonstration was """to protest unfair and deceptive practices used by Wedgewood . . . in acquiring the real property of [the former homeowners], and evicting them from their home."'" (*Ibid.*) There were other indications in the record that the protest implicated more than the plight of two individuals, including the involvement of the Alliance, "an advocacy organization committed to 'fight[ing] against the displacement of long[-]term residents' and to 'sav[ing] homes from foreclosures.'" (*Id.* at p. 1251.) The picketers chanted: "'Greg Geiser, come outside! Greg Geiser, you can't hide!'" which the court held could not be reduced to its literal words, but was "reasonably be understood to mean that Geiser should be ashamed of, or accountable for, the business practices by which the [former homeowners] were displaced from their long-term residence, and that Geiser

11

could not hide from that accountability." (*Ibid.*) "It is common knowledge that foreclosures, evictions, and inadequate housing are major issues in communities throughout California, and the participation of more than two dozen members of an advocacy group dedicated to fighting foreclosures and residential displacement must be considered against that backdrop." (*Ibid.*)

The appellate court, the Supreme Court held, "overlooked the ways in which these contextual considerations inform the expressive meaning of the protest outside Geiser's home." (*Geiser, supra*, 13 Cal.5th at p. 1252.) In *FilmOn,* the *Geiser* court noted, it had not examined "the contours of the first-step analysis, and we made no ruling on any first-step dispute. Instead, we assumed without deciding that the speech at issue did implicate issues of public interest, and we focused our inquiry on the second-step question of whether the defendant's statements — in light of the 'context' in which they were made, 'including audience, speaker, and purpose' — contributed to public debate on those issues." (*Ibid.*) The public issues in *FilmOn* had been clear from the content of the speech at issue. (*Ibid.*) "*FilmOn*'s first step is satisfied so long as the challenged speech or conduct, considered in light of its context, may reasonably be understood to implicate a public issue, even if it also implicates a private dispute. Only when an expressive activity, viewed in context, cannot reasonably be understood as implicating a public issue does an anti-SLAPP motion fail at *FilmOn*'s first step." (*Id.* at pp. 1253-1254.)

In separately addressing an issue of how to characterize speech when analyzing *FilmOn's* first step, the court held: "*FilmOn*'s first step asks what issue or issues the challenged activity may reasonably be understood to implicate. On that question, the movant's beliefs, motivations, or characterizations may be relevant and, if objectively reasonable, will inform the analysis. But they are not themselves dispositive and, if not objectively reasonable, will not carry weight. If a reasonable inference can be drawn that the challenged activity implicates a public issue, then the analysis proceeds

12

to *FilmOn*'s second step." (*Geiser*, *supra*, 13 Cal.5th at p. 1254.) "[T]he touchstone is objective reasonableness." (*Id.* at p. 1255.)

At the second step of the *FilmOn* analysis, which asks about the "functional relationship exists between the speech and the public conversation about some matter of public interest," the court must consider the speech's context. (*FilmOn*, *supra*, 7 Cal.5th at pp. 149-150.) In *Geiser*, that context was the sidewalk demonstration. (*Geiser*, *supra*, 13 Cal.5th at p. 1255.) In addition to facilitating help for the homeowners' directly impacted by Wedgewood's actions, the protest "also served to draw attention to the alleged unfairness of the business practices by which the [the homeowners] were foreclosed upon and evicted. [Alliance's] participation in the protest must be understood with the latter purpose in mind. The context makes clear that this sidewalk protest furthered public discussion of the public issues it implicated. It is a paradigmatic example of 'conduct in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public interest.'" (*Ibid.*) The dual purpose of the protest was also bolstered by the media coverage of it, and a press release by Wedgewood responding to that coverage. (*Ibid.*)

Applying the two-step test in *Geiser* to the instant case, "First, we ask what 'public issue or . . . issue of public interest' the speech in question implicates—a question we answer by looking to the content of the speech." (*FilmOn*, *supra*, 7 Cal.5th at pp. 149-150.) The speech at issue here is about D'Arcy – his alleged lack of competence, his purported mental state, how he is perceived by BASTA, his online reviews, his truthfulness, and other characteristics. While these comments may have been made in the context of an organization that contests evictions, there is no public interest or public issue in one anonymous reviewer's perceptions of an attorney he has never met, which is the only subject of his entire review. From the position of a reasonable, objective observer, the alleged defamatory statements are not connected to issues about unlawful detainer litigation, housing and evictions, but only the reviewer's animus toward D'Arcy.

13

Accordingly, it cannot be "reasonably . . . understood to implicate a public issue." (*Geiser*, *supra*, 13 Cal.5th at p. 1253.)

The cases that Schulte cites (without engaging in further discussion of them) do not help him. In *Bishop*, *supra*, 86 Cal.App.5th 893, a teacher was fired for engaging in "'flirtatious'" online messaging with a 19-year-old former student. The school fired the teacher and sent him a termination letter. The teacher filed a breach of contract and defamation action, after which the head of the school made a comment to the student newspaper, which the teacher also claimed was defamatory. The trial court subsequently granted the defendants' anti-SLAPP motion as to the defamation claim. (*Id.* at pp. 897-898.) The appellate court agreed, finding that the defendants had demonstrated the purportedly defamatory conduct arose from protected activity under section 425.16, subdivision (e)(4). The statements satisfied the first part of the two-part test explained in *Geiser* and *FilmOn.* "The content of the speech and conduct here— student safety and well-being—implicates a matter that affects a large number of people beyond the direct participants, including all current and former students at the School, their family members, and the School's staff. The safety and well-being of students and children is plainly an issue of public interest." (*Bishop*, at p. 905.)

In *Murray v. Tran* (2020) 55 Cal.App.5th 10 (*Murray*), the parties were partners in a dental practice. After their relationship deteriorated over business concerns, Tran began to express concerns over Murray's dental care in e-mails copied to others. Matters worsened from there, involving more statements by Tran about Murray's competence. (*Id.* at pp. 16-20.) As relevant here, Murray brought defamation claims against Tran. Tran moved to strike under section 425.16, subdivision (e)(4), arguing the quality of services offered by a practicing dentist was an issue of public concern. (*Murray*, at p. 21.) The trial court granted the motion and dismissed the defamation claims. (*Id.* at pp. 24-25.) On appeal, the court found the defamatory statements met the first part of the *FilmOn* test. "[T]he statements concerned Dr. Murray's qualifications

14

and competence to perform his dental services. These are matters about which the public, including current and future dental patients, have a vital interest." (*Murray*, at p. 30.)

Yang v. Tenet Healthcare, Inc. (2020) 48 Cal.App.5th 939 (*Yang*), is another case applying *FilmOn* in the healthcare context. A surgeon alleged defamation by other medical professionals, ultimately suing individual doctors, a hospital, and its staff for allegedly making false statements about the surgeon's qualifications, competence, and medical ethics. (*Yang*, at p. 943.) The surgeon alleged the defendants made these statements to, among others, her "'patients,' and 'members of the general public.'" (*Ibid.*) The appellate court found that she met the first part of the *FilmOn* test, because the statements "implicated . . . the qualifications, competence, and professional ethics of a licensed physician" and therefore concerned a public issue. (*Yang*, at p. 947.)

This case bears little resemblance to any of those cited above.[4] What they all have in common is a direct connection between the allegedly defamatory statements and the issue of public interest – student safety and the competence of medical practitioners. The statements came from sources with expertise about such matters – the head of a school, fellow dentists, and medical personnel. The statements were made in a context where they were likely to be believed – official statements from a school, e-mails to colleagues, and statements from a medical institution, its staff, and doctors to colleagues and patients. What we have before us in this case, by way of contrast, is an anonymous Internet post from a person who admittedly never used the services of the lawyer in question. The anonymous post, which was full of spelling errors, made statements about the lawyer's alleged competence, mental health, Yelp reviews, and other matters. Schulte claims these statements were connected to the larger issue of housing

---

[4] Schulte does not claim that his review is about a public issue or issue of public interest because it concerns the professional competence of an attorney. Were he to make that argument, we would reject it on the grounds that he admitted he never hired D'Arcy, and the context of his post was not a true discussion of a lawyer's competence by someone who could make an informed comment on the subject, but personal attacks.

15

and unlawful detainer cases without ever mentioning them in the allegedly defamatory statements or anywhere else in his post. We disagree, and find no commonality between this case and those he cites.

Schulte argues that D'Arcy's web site hosted conversations about the use of jury trials in unlawful detainer actions, and therefore, we should consider that "context." But that is not "context," in the sense that the sidewalk protests in *Geiser* concerned both the individual homeowners and the policy issues implicated, the larger issues of school safety implicated in *Bishop*, or credible statements made about the competence of medical professionals in *Murray* and *Yang*. Had the allegedly defamatory anonymous comments even mentioned substantive discussions of housing policy, our conclusion might be different, but they did not, instead focusing on Yelp reviews, mental health, and other completely unrelated matters about D'Arcy personally.

Schulte's briefing discusses the policy role of BASTA at length, but the only connection to BASTA in the post is that BASTA purportedly represented him successfully, that D'Arcy's supposedly has a poor record against them, and that BASTA allegedly considered D'Arcy a joke. Merely mentioning BASTA does not meet the "in connection with" requirement of section 425.16, subdivision (e)(4). (See *FilmOn*, *supra*, 7 Cal.5th at p. 149.) There is simply no connection between the post and an actual public issue or issue of public interest. Because he chose to attack D'Arcy personally rather than attacking his statements or beliefs, and because he failed to offer any substantive statements about policy issues, Schulte cannot now claim he made the statements in any larger context. The entire focus of his post was attacking D'Arcy. No reasonable observer would make a connection between his ad hominem attacks and larger issues concerning rental housing. Schulte's post reads like what it is – a dime-a-dozen Internet attack, complete with absurd inferences and typographical errors, nothing more.

Accordingly, we need not consider the second part of the *FilmOn* test. Were we to do so, however, we would find no contribution to any public discourse from

16

Schulte's comments. As we said, this was not a policy debate, it was a series of personal attacks. Personal attacks are not necessarily defamatory, and it is ultimately a question for the trial court and/or the jury as to whether the statements in Schulte's post qualify as such. But we decline to engage in the fiction that comments about D'Arcy's purported competence, mental health, truthfulness about trivial matters, and positive Yelp reviews (or lack thereof) "'contribute to the public debate'" about some issue of public interest. (*FilmOn*, *supra*, 7 Cal.5th at p. 150.) Were we to make that finding, we would be doing what the court explicitly rejected in *FilmOn:* "[V]irtually always, defendants succeed in drawing a line—however tenuous—connecting their speech to an abstract issue of public interest." (*Ibid*.) Schulte asks us to engage in just such abstraction – going from statements about purported mental illness and Yelp reviews and publicity to issues about the litigation of unlawful detainers and law and policy concerning rental housing. His contention takes connecting speech to a public issue to an absurd level of abstraction.

We decline to do so. The statements at issue here have no connection with a public issue or issue of public interest. What this motion reflects was less of a contribution to public debate and more of a petty beef between a lawyer on one side and an Internet instigator on the other, nothing more. Accordingly, even under this new test,[5] we reach the same conclusion as our previous opinion – that Schulte has failed to meet his burden to demonstrate that the anti-SLAPP statute applies. We therefore need not consider whether the complaint had the requisite minimal merit to proceed.

---

[5] Although it is not addressed in *Geiser*, *supra*, 13 Cal. 5th 1238, we believe the same two-step analysis applies to motions under section 425.16, subdivision (3). To the extent it does not, the *Geiser* court cited the same cases our prior opinion did with regard to the definition of public issue or public interest: *Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO*, *supra*, 105 Cal.App.4th at pages 919-924, and *Weinberg v. Feisel*, *supra*, 110 Cal.App.4th at pages 1132-1133. As we discussed in that opinion, this matter falls well outside the definitions of public issue and issue of public interest set forth in those cases.

*E. D'Arcy's Request to Reverse a Trial Court Finding*

As we stated in *D'Arcy*, *supra*, G057203: "In his respondent's brief, D'Arcy requests we 'affirm the trial court's ruling, except where D'Arcy was determined to be a limited public person . . . , and as to that ruling, to hold that D'Arcy is a private individual.'

"We decline. First, D'Arcy failed to cross-appeal, and we do not grant affirmative relief based on a request in a respondent's brief. Second, we have no jurisdiction to do so in any event. The expedited, interlocutory appeals in anti-SLAPP motions permit this court to review a trial court's decision to grant or deny an anti-SLAPP motion (§ 425.16, subd. (i)), not to decide collateral matters unnecessary to our review of the motion. Accordingly, D'Arcy's request is improper." (*D'Arcy*, *supra*, G057203.)


III

DISPOSITION

The order is affirmed. D'Arcy is entitled to his costs on appeal.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


DELANEY, J.

18