Filed 3/23/26  Green v. Whitcomb CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DAVID GREEN et al., <br><br>        Plaintiffs and Respondents, <br>v. <br>TIMOTHY WHITCOMB, <br><br>        Defendant and Appellant. | A173185 <br><br> (Sonoma County <br> Super. Ct. No. 23CV01361) |

Defendant Timothy Whitcomb (Whitcomb) appeals the denial of his special motion to strike the complaint filed against him by a former business partner (Code Civ. Proc., § 425.16).  We affirm.  The complaint's allegations against him do not arise from protected activity.

## BACKGROUND

Selena Green (Selena) and Whitcomb are former business partners who jointly owned a company called "Whitcomb and Cate, Inc."[1]  The parties all state in their appellate briefing this was an estate sale business.  In May 2020, Selena and Whitcomb entered into a settlement agreement by which Whitcomb resigned from the company and transferred his entire

---

[1] Respondents Selena Green and David Green are married.  We refer to them by their first names to distinguish them.

1

interest in the business to Selena (then known as Selana Mordue and also referred to as Selena Cate).

Selena and her husband David subsequently filed a complaint against Whitcomb and an entity called Kind Estate Sales, LLC alleging a single cause of action for slander per se.[2] As described by the trial court in its ruling: "[t]hey allege Whitcomb said the following:

"1. On December 1, 2020, Whitcomb posted and published defamatory statements on his Facebook page claiming that Plaintiffs were thieves and stole his company and property from him, as well as the property of his clients.

"2. On December 10, 2021, Whitcomb stated to an individual named Sara McNamee and other individuals not known to Plaintiffs that his previous business partner was awful, referring to Plaintiffs, and that he was waiting for someone else to sue Plaintiffs over a bunch of clocks, then continued to say Plaintiffs were using his name for the business and that he had evidence that they owed him money.

"3. On October 30, 2023, Whitcomb told an individual named Susan O. McElroy and several other unknown people about Plaintiffs that, 'they are thieves. They stole their company from me.'

"4. In Spring of 2023, Whitcomb posted and published similar defamatory statements on Yelp, Facebook, and on the Kind Estate Sales websites claiming Plaintiffs were thieves and stole his company and property from him and his clients."

---

[2] A default was entered against Kind Estate Sales, LLC and that party is not at issue here. It appears from the record that is the business name of the company Whitcomb formed after severing ties with Selena.

2

The complaint is bare-bones and provides no factual context for these allegedly defamatory statements. It merely alleges that Selena bought the business of Whitcomb and Cate pursuant to the settlement agreement, and attaches a copy.

Whitcomb filed a special motion to strike the complaint, asserting the statements he allegedly made were protected activity because "they serve a public interest by informing consumers about the fitness and integrity of Plaintiffs as service providers in a trust-based industry." The declaration he filed in support of the motion likewise provides no factual explanation of the circumstances in which any of the allegedly defamatory statements were made and no discussion of the business or industry in which the parties work; it simply attaches a raft of voluminous exhibits, accompanied by uninformative and argumentative descriptions such as "Email Chain (June 12, 2020) [¶] Communication between Whitcomb and Fish. [¶] Documents Spergel estate separation. [¶] Shows contradictory claims [¶] Preserved in original form." Plaintiffs filed no evidence in opposition to the motion other than a declaration listed in the register of actions as a declaration relating to attorney fees in support of their opposition papers (the document is not part of the appellate record), and Whitcomb's reply papers are not in the record, including a declaration filed with his reply papers.

The trial court denied the motion, ruling both that the statements were not protected activity and that plaintiffs had demonstrated a probability of prevailing on their claim. This timely appeal followed.

## DISCUSSION

We presume the parties' familiarity with the general anti-SLAPP framework and the standards governing our de novo review of the court's ruling. (See generally *Doe v. Ledor* (2023) 97 Cal.App.5th 731, 741.)

3

Whitcomb asserts the court erred with respect to both prongs of the anti-SLAPP analysis, but we address only the first: that is, whether the claims against him arise from protected activity. We do not address whether the Greens demonstrated a probability of prevailing on their claims.

Whitcomb argues his allegedly defamatory statements were protected under the catchall provision of the anti-SLAPP statute, Code of Civil Procedure section 425.16, subdivision (e)(4), which as relevant here protects "any . . . conduct in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public interest." As construed by our Supreme Court, this provision requires a two-step analysis. (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149.) "[F]irst, we ask what public issue or issues the challenged activity implicates, and second, we ask whether the challenged activity contributes to public discussion of any such issue." (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1243 (*Geiser*).)

Whitcomb's briefing is disorganized, but we discern the following argument(s) as to why he claims his speech constitutes protected activity. First, he argues vaguely that the Greens themselves "created a public controversy concerning honesty in a consumer-facing industry" (i.e., the estate-sale business) by "publicly announc[ing] the parties' business separation (Feb-Mar 2020), publish[ing] Facebook posts and a December 2020 blog claiming ownership of 'Whitcomb and Cate,' and post[ing] multiple Yelp responses naming Appellant." Second, he asserts that "In April and May 2023, [Selena] posted multiple public Yelp responses to third-party Lawrence Spergel's accusations regarding his clocks." He gives only one example, quoting her statements that " 'The person that Larry Spergal legally should be dealing with is Tim Whitcomb of Kind Estate Sales,' " that

Spergel is Whitcomb's client and that Whitcomb was taking responsibility for all debts associated with Spergal.  Citing nothing in the record or any law, Whitcomb then argues that "[e]state liquidators operate in a trust-based industry where consumers rely on public reviews and reputation when selecting professionals to access their homes during vulnerable transitions." Based on that unsupported assertion, he concludes, "[b]y placing the business separation and property dispute before thousands of potential customers on Yelp and Facebook—the very platforms consumers consult before hiring— [the Greens] transformed any private matter into a public controversy concerning honesty and property handling in a consumer-facing industry." Citing *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883 (*Wilbanks*) (but not discussing that case), he asserts broadly in his reply brief that his statements qualify for anti-SLAPP protection because "consumer-facing communications are matters of public interest."

We are unpersuaded.

The most fundamental difficulty is that Whitcomb does not address the content of his alleged speech.  (He does not even mention the allegedly defamatory statements until his reply brief, and even then only in a background "Statement of Facts.")  His entire focus is on circumstances that he seems to imply were the broader context for his allegedly defamatory statements—which is a legitimate mode of analysis so far as it goes (see *Doe v. Ledor*, *supra*, 97 Cal.App.5th at p. 745 [under catchall provision, "context plays an equally important role as the content of the speech at issue"]).  But he does not explain how any of those circumstances relate to what he allegedly *said* (much less explain how what he allegedly *said* contributes to a public discussion concerning an honest and reputable estate sales industry, which is what he claims is the public issue implicated here (see *Geiser*, *supra*,

5

13 Cal.5th at p. 1243). What, for example, does any of the foregoing detail about Green's response to a Yelp review or her announcement of the parties' business separation have to do with Whitcomb allegedly telling someone named Susan McElroy that, " 'They are thieves. They stole their company from me' "? Or with his allegedly telling someone named Sara McNamee "about how awful his previous business partner was" "and that he had all sorts of evidence that he was owed a bunch of money"? The complaint alleges numerous allegedly defamatory statements, and these are just some examples. But Whitcomb addresses none of them.

This omission dooms his appeal, because to qualify for protection under the catchall provision " 'it is not enough that the statement refer to a subject of widespread public interest; *the statement must in some manner itself contribute to the public debate.' "* (*FilmOn.com Inc. v. DoubleVerify Inc.*, *supra,* 7 Cal.5th at p. 150, italics added.) " '[T]he fact that "a broad and amorphous public interest" can be connected to a specific dispute' is not enough." (*Ibid.*) By failing to address any of his actual speech in question, Whitcomb has skipped the second step of the analysis called for to assess whether speech concerns a public issue. He doesn't even acknowledge that two-step framework. Yet it is the second step "that usually plays the more prominent role in screening anti-SLAPP motions because caselaw 'demonstrate[s] that virtually always, defendants succeed in drawing a line— however tenuous—connecting their speech to an abstract issue of public interest.' " (*Geiser*, *supra*, 13 Cal.5th at p. 1250.) Whitcomb's arguments thus fail at the threshold. Put simply, even if we agreed that "honesty and property handling in a consumer-facing industry" such as this one is an issue of public interest (and we express no opinion on that subject), he has failed to

show that any of *his* alleged speech was uttered "in connection with" that issue (Code Civ. Proc., § 425.16, subd. (e)(4)).

Even if we dig deeper, there are additional flaws with his argument.

To begin with, Whitcomb doesn't sufficiently explain the surrounding circumstances that he implies are relevant.[3] The statement of facts in his opening brief presents a vague and one-sided picture based on isolated snippets of the record, telling us that Selena accused him of embezzlement in an email to "the president of EstateSales.org," and that she also mentioned Whitcomb in "multiple public Yelp responses" responding to a negative Yelp review posted by a person named Lawrence Spergal who accused her of keeping some of his clocks. His reply brief elaborates a little farther but not by much. In it, he explains that "[t]he underlying controversy entered the public sphere when a third party, Larry Spergel, posted a public Yelp review warning customers: 'Would give zero stars if possible . . . Cate personally took possession of my two rare clocks . . . she took them and never returned them,'" and that her response to the Yelp review "expand[ed] what had been a private property dispute into a public controversy" by "repeatedly nam[ing] [Whitcomb] and attempt[ing] to shift responsibility." This is no more helpful. His failure to summarize the relevant facts in a comprehensible way impedes our review, because it is one-sided, incomplete and confusing.

It also is improper. An appellant must " '[p]rovide a summary of the significant facts limited to matters in the record.' The *significant facts* are not simply the facts favoring the appellant. Rather, 'An appellant must fairly

---

[3] His briefing also contains numerous factual assertions that are not supported by any citation to the record. We disregard them all. (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 156.)

set forth all the significant facts, not just those beneficial to the appellant.' " (*Perry v. Kia Motors America, Inc.* (2023) 91 Cal.App.5th 1088, 1096; Cal. Rules of Court, rule 8.204(a)(2)(C).) When an appellant doesn't do this, we can deem the entire issue forfeited (see *Perry*, at p. 1096; *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) We do so here.

Finally, even if not forfeited we would reject Whitcomb's argument that the defamation claim arises from protected activity, which basically amounts to, "she started it." We have reviewed those portions of the record that Whitcomb has cited but discussed only selectively; they reflect that Selena responded to a negative Yelp review by Spergel in an appropriate, professional manner and contacted a website operator about some inappropriate statements Whitcomb had made about the Greens on his business profile. We relegate the details to a footnote.[4] Whitcomb does not

---

[4] The documents he cites show that the former customer, Larry Spergel, posted a negative review about a "[t]errible experience with Selena Cate," asserting Selena "personally took possession of my 2 rare clocks so that they were no longer available to be auctioned or sold" and "never returned them to me," and that she responded by stating the estate sale had taken place four years earlier and had been conducted not by her but by her "ex-business partner" Whitcomb. She explained that she had "bought Tim out" in June 2020 and that Whitcomb went on to form his own company called Kind Estate Sales which conducted the auction in question. She added, "[t]he person that Larry Spergal legally should be dealing with is Tim Whitcomb of Kind Estate Sales" because Whitcomb, not she, is the person who bought the clocks in question. She went on to describe what she called "a paper trail of all of this" including "a strong file of information proving ownership of these clocks" by Whitcomb, said that "[i]f there should be any debts, my ex-business partner is 100% responsible for these as per the Settlement Agreement," said she had received "a half dozen harassment emails from Larry Spergal" and that her lawyer had asked Spergal to take down his Yelp review, and concluded by stressing the "integrity and honesty" with which her business operates, the pride she takes in her work and her company's "exceptional [] success[]."

8

address the legal significance of the latter circumstance and so it warrants no discussion.  To the extent he contends a public issue exists simply because Selena responded to a negative review from a disgruntled client on social media, we do not agree.

When a customer airs a grievance on social media concerning a single transaction, the subject of that grievance is a purely private dispute; it does not qualify as an issue affecting the public interest for purposes of anti-SLAPP protection simply because it is aired before a wide audience on social media.  That is the precise situation addressed by *Woodhill Ventures, LLC v. Yang* (2021) 68 Cal.App.5th 624 (*Woodhill Ventures*), which held that a customer's allegedly defamatory statements about a single negative experience he had with a small business owner that the customer made in social media posts and on a podcast he hosted are not protected activity.  (*Id.* at p. 627.)  "Shouting makes the volume loud," *Woodhill Ventures* observed,

_____

The other documents he cites concern a complaint Selena made to a website called "EstateSales.org" asking the site to remove an inappropriate description of her business that Whitcomb made on the listing for his own competing business that she said was just the latest in a campaign of Whitcomb's "cyber bullying" that had cost her more than $25,000 in legal fees already.  The description stated: "CAVEAT EMPTOR.  'Selena Cate Green and David Green are continuing to use my reputation and last name WHITCOMB in their new venture WITHOUT MY PERMISSION and are supposed to transition to Cast + Found.  Sadly, to date they have blatantly ignored cease and desist orders and have forced me to retain legal counsel to seek immediate remedy."  She also told the website operator that she did not pursue legal action against Whitcomb "because he signed over the company to me for a dollar but I have all the information and files to prosecute him for embezzlement which I may still do."  In response to Selena's email, the website operator told Whitcomb to "remove or reword" the material that she was objecting to "because its not relevant to your service offerings."

but "does not make the content worthy" of anti-SLAPP protection as a public issue. (*Woodhill Ventures,* at p. 633.) Whitcomb does not cite much less discuss this case and so we will not explain its analysis. Suffice it to say, under *Woodhill Ventures* Larry Spergel's criticism of Selena in a public Yelp review does not concern a subject that implicates the public interest. It therefore stands to reason that her *response* to Spergel does not either. Nor therefore, by extension, could *Whitcomb's* response to her speech (assuming he had shown some connection between Selena's response to Spergel's negative Yelp review and *his* speech which, as said, he has not). Whitcomb has offered no legal reason nor cited any legal authority suggesting otherwise.

*Wilbanks*, *supra,* 121 Cal.App.4th 883, which Whitcomb cites but does not discuss, is not to the contrary. Whitcomb says it "hold[s] that communications affecting consumer evaluation of service providers constitute matters of public interest"—a principle that is directly refuted by *Woodhill Ventures*. *Wilbanks* does not stand for such a broad categorical rule, it bears no resemblance to this case, and Whitcomb's merely citing *Wilbanks* without discussing it and showing how its principles govern this case is not a proper appellate argument. (See, e.g., *Doe v. McLaughlin* (2022) 83 Cal.App.5th 640, 654 ["Although [appellant] cites to legal authority, he does not explain how that authority applies here. We therefore may disregard the point"].)

*Wilbanks* involved information published on a website that was devoted to providing consumer protection information about a particular industry (viatical settlements), operated by a consumer watchdog who had worked in, researched and written books on the subject. (See *Wilbanks*, *supra*, 121 Cal.App.4th at pp. 889, 900.) The statements at issue identified brokers the website host believed had engaged in unethical or questionable practices,

10

in order to help consumers choose a broker. (*Id*. at p. 900.) In holding such statements were made in connection with an issue in the public interest (and thus were protected activity under the catchall provision of the anti-SLAPP statute), *Wilbanks* specifically noted they were "not simply a report of one broker's business practices, of interest only to that broker and to those who had been affected by those practices" but, rather, "were a warning not to use plaintiffs' services," made "[i]n the context of information ostensibly provided to aid consumers choosing among brokers" in the industry. (*Id*. at p. 900.)

That is very different from this case. The statements held protected in *Wilbanks* "included some discussions of topics in the public interest." (*Woodhill Ventures*, *supra*, 68 Cal.App.5th at p. 635; see also *id*. at p. 634 [distinguishing *Wilbanks*].) Here by contrast, as in *Woodhill Ventures*, Whitcomb's alleged statements "were not a discussion of anything" but "only a diatribe" and " 'an attempt to exact a personal revenge.' " (*Woodhill Ventures*, at p. 635.)[5]

---

[5] In his reply brief, Whitcomb asserts vaguely that from September 2020 through November 2022, he sought to resolve unspecified "disputes" with Selena "through private and professional channels rather than" publicly, and that there were "ongoing disagreements concerning the underlying property issues." In support, he cites to 96 pages of voluminous exhibits attached to the sparse and uninformative declaration he filed below. This dense string citation to the record is unhelpful and unilluminating. Because Whitcomb "has not bothered to explain why these record citations are helpful . . . , we have no obligation to try to figure it out." (*In re S.C.* (2006) 138 Cal.App.4th 396, 411.) Further, Whitcomb tells us that "[t]he substance of those disputes is not before the Court except to provide context for Respondents' litigation posture and the timing and merits of their Complaint." We agree the substance of the business dispute is irrelevant.

11

## DISPOSITION

The order denying the anti-SLAPP motion is affirmed. Respondents shall recover their costs.

STEWART, P. J.

We concur.

MILLER, J.

DESAUTELS, J.

*Green et al. v. Whitcomb* (A173185)